DEMPSEY, Appellant, v. WELLS, Respondent.

St. Louis Court of Appeals, January 24, 1905.

1. ATTORNEYS: Married Woman: Ratification. Where an attorney rendered services to a married woman prior to the emancipation act of 1889, in securing for her the title to certain land, the fact that she retained the land after the passage of that act was not a ratification of a contract to pay for such services.

2. ———: Running Account: Limitations. Where an attorney rendered services to his client, in perfecting and protecting the client's title to real estate, covering a period of eleven years, and in an action for such services testified that he made a contract at the beginning whereby he was to wait ten years

for his pay, but his own statements tended to show a separate employment for each item, it was proper to submit to the jury the question as to whether there was a separate contract for each item, and whether the items of the account for services more than five years before the bringing of the action were thus barred by the statute of limitations.

3. ——: Compensation: Married Woman. In an action by an attorney against a woman for services rendered her while she was married, where she offered as a defense that the services were rendered for her husband, a statement rendered by the plaintiff to the husband prior to the date of any of the alleged services and not referring to the same matters, was incompetent evidence.

Appeal from Pike Circuit Court.—*Hon. David H. Eby,* Judge.

REVERSED AND REMANDED.

*T. B. McGinnis* and *J. D. Hostetter* for appellant.

The court erred in giving instruction at the instance of defendant. Kostuba v. Miller, 137 Mo. 161, 38 S. W. 946; Long v. Martin, 152 Mo. 668, 54 S. W. 473; Farley v. Stroeh, 68 Mo. App. 85; Kennedy v. Transit Co., 103 Mo. App. 9, 78 S. W. 77; Chitty v. Railroad, 148 Mo. 78, 49 S. W. 868.

*Pearson & Pearson* for respondent.

STATEMENT.

The plaintiff, an attorney at law, instituted this action to recover the reasonable value of legal services rendered to the defendant at different dates from 1886 to 1901, inclusive. The defendant's husband, James R. Wells, became heavily embarrassed financially and in November, 1886, made a general assignment for the benefit of his creditors. A few days prior to the assignment, most of Wells' real estate, comprising more than 1200 acres of valuable land and some lots in the town of Clarksville, had been mortgaged.

The defendant, acting under advice from the plaintiff, refused to join in the mortgages. Mrs. Wells owned no property at the time of her husband's failure except her inchoate right of dower in his real estate; and the benefit accruing to her from the plaintiff's legal services arose, it is said, from his so utilizing her dower right as finally to obtain title for her to about $15,000 worth of her husband's realty. To achieve this result, besides the conception of the plan by which it was achieved, many transactions were necessary and numerous conveyances and other details were looked after and performed by the plaintiff. Most of the services were rendered after 1890, but three items are alleged to have been prior to that date. The total sum demanded as the reasonable value of plaintiff's services was $2,350. The petition, after stating the business of the plaintiff, alleged that he rendered the services between 1886 and 1901, and that their reasonable value was the sum stated; that the services constituted an open, running and continuous account from the date of the first item to the date of the last one—May, 1901. In the petition an itemized statement of the account appears as follows:

"Fannie I. Wells, in account with I. C. Dempsey, Dr.

"1886.

" To advice and services in saving her interests in the real estate of her husband James R. Wells, in November, A. D. 1886, at the time said James R. Wells made a general assignment for the benefit of creditors. Said real estate consisting of about thirteen hundred acres of land and some town lots, and

"1887.

"To advice and service in saving the interests of said Fannie I. Wells in said real estate at the time of and in respect to the sale of said land by the assignee of said James R. Wells in January, 1887, $200.

"1888.

"To advice and service to her interests in said lands and town lots in May, A. D. 1886, at the time of and in respect to suits brought in the Louisiana Court of Common Pleas by James A. Sanderson against said James R. Wells and Parson C. Mackey to set aside a deed for a lot of ground in the city of Clarksville made by said Wells to said Mackey, $100.

"1890.

"To services in procuring contract and agreement with Elizabeth J. Wells, William Wells, George Wells, Charles Wells and R. P. Wells, in and by which it was agreed and arranged that Elizabeth J. Wells would buy the home farm of said James R. Wells and Fannie I. Wells, consisting of 142 acres at a trustee's sale under a deed of trust thereon to be thereafter had and to convey the same, together with two hundred acres, being the east part of lot six of Survey 1755, to said Fannie I. Wells, the latter conveying her interest to 111 12-100 acres, the south part of lot four (4) of said survey west of railroad and two hundred acres part of lots four (4) and six (6) of said survey, laying along the east side of said railroad, and the consummation of said contract and agreement in and by which said Elizabeth J. Wells conveyed by good and sufficient deed to said Fannie I. Wells, in July, 1890, the said home tract of 142 acres, the said 200 acres, east part of said lot 6, in survey 1755; also an island in the Mississippi river, containing about 30 acres, and also for services rendered at the special instance and request of defendant in defending the title to the above described tracts so acquired by defendant from July, 1890, to 1900, $1,500.

"1894.

"To advice and legal services in saving the real estate conveyed to said Fannie I. Wells from being taken by creditors at the time the will of said Eliza-

beth Jane Wells was made in January, 1894, and in June, 1894, when the 133 acre tract was sold under deed of trust made to Orson Lee, $100.

"1895.

"To legal services and advice in adjusting matters with Elizabeth J. Wells and others in April, 1895, for the purpose of preventing contract above mentioned from being exposed, $100.

"1897.

"Services in making settlements with Berkley E. Wells, John Middletown and others in May, 1897, by which over $1,500 were saved and the lands of said Fannie I. Wells relieved of the lien thereon for said sum and in saving interest in land bought by Dr. Pharr and the conveyance of 148.30 acres to said Fannie I. Wells by deed recorded in Vol. 115, page 343 and 42 acres conveyed by deed recorded in Vol. 115, at page 209 and the proceeds of lands conveyed by deeds recorded in Vol. 108, pages 258 and 533, $200.

"1900.

"To value of legal services in making sale of the home farm for defendant of 142 acres to Wm. D. Cummins in February, 1900, $200.

"1901.

"To legal services in procuring the allowance of a demand for $500 in the Probate Court of Pike county, Missouri, in May, 1901, against the estate of Dr. C. W. Pharr, $50.00; total, $2,350.

Immediately following the foregoing statement of the plaintiff's account the petition contains this paragraph:

"Plaintiff states that the charges made for the services for the various items of service and for legal advice given as above set forth are reasonable, and that said services were rendered and such advice given under and by virtue of a contract between the plaintiff

and defendant by which the plaintiff was expressly to look after and attend to all matters affecting the property rights and interests of the defendant during all the time for which charges are made as hereinbefore set out.''

The answer was a general denial and a plea that each item set forth in the petition down to and including the item dated 1897 had been due, if due at all, more than five years prior to the institution of the action and was barred by the statute of limitations.

The plaintiff testified to a distinct contract with the defendant in regard to all services rendered to her during and after the year 1890. His statement is that Mrs. Wells' title to the land, which had become vested in her by the means the plaintiff used in her behalf, would not become perfect and unassailable until there had been an adverse possession by her for ten years; that meanwhile her interest was subject to attacks by her husband's creditors and he was to look after and defend her interests until the title was perfect through adverse possession and at the end of that time she was to pay him for his services. We copy his testimony as to when he was to be paid:

"Q. What was said about your defending her title, what was said between you and Mrs. Wells in 1890? A. At the time of the making of the contract and in reference to those transfers, I explained to her that I could not make that title safe and certain until ten years expired, because it was subject to attack for bad faith upon the part of any of them, as I thought, and it was then agreed between me and Mrs. Wells that I would watch it and make whatever defense I could, if it was attacked, and at the end of the time she would settle with me or as soon as she could dispose of the real estate—any of it. She acquired the title in July, 1890. She disposed of the home place of 142 acres in 1900, and the 200 acres of bottom land in 1902, William D.

Cummins purchasing the home place and two other parties whose names I do not recall the bottom tract.

"Q.   What did Mrs. Wells say in reference to your guarding the title against attack from various sources? What did she say in 1890 when you made your arrangement with her about it?   A.   She asked me to watch it through and to protect it if I could until the time ran, the ten years, which I told her it would take to make it safe.   I based my idea that it required ten years, as I stated to her, that the good faith of the transaction was subject to attacks from the creditors of her husband, James R. Wells, until the ten year period of limitation would run on those conveyances made to her.   I explained to her that while it might possibly be sold, before the ten years' limitation had run, to an absolute stranger without any knowledge of the situation or without inquiry into the whole matter; but that it would probably be very difficult to sell it advantageously in any event or for any value.

"Q.   What, if anything, was said about when you were to be paid for your services?   A.   Not until the period of time ran when she could dispose of the property to advantage, ten years, I agreed to see it through."

Mrs. Wells' title to the lands previously owned by her husband, but which the plaintiff had managed to vest in her, was attacked by various creditors in different forms of actions, which the plaintiff defended successfully; and finally her estate ripened into a secure one and obtained a good reputation so she could sell it.   The defendant denied employing the plaintiff as attorney at all and testified that in everything he did he acted as her husband's attorney and not as hers. James R. Wells, the husband, died in the spring of 1903, and this action was instituted in the fall of that year.   The account was not presented to the defendant for payment until after her husband's death.   There was a jury trial of the case, resulting in a verdict for

the plaintiff for $100; judgment was entered accordingly and he appealed, assigning errors in the rulings on the evidence and the instructions, as well as that the verdict was manifestly against the evidence and the outcome of passion and prejudice on the part of the jury.

GOODE, J. (after stating the facts).—The court gave all the instructions requested by both parties and plaintiff complains of those given at the instance of the defendant. The contract declared on was express in all its terms, except the amount of compensation which the plaintiff was to receive. His testimony is in accord with the petition in this regard. He alleged in his petition and testified in person that he was employed by the defendant to look after her interests and that she promised to pay him for his services at the end of ten years when the title to the land formerly belonging to her husband, which he had acquired for her, should have become vested in her by adverse possession. That the plaintiff should be defendant's attorney, that she would pay him for the services rendered and when she would pay him, were settled by agreement. The only item of the contract that was not thus settled was, as stated, the amount of his compensation, and by law that would be the reasonable value of his services. The instructions requested by both sides adopted the theory that the plaintiff might recover, not only if the jury found there was an express contract between him and the defendant that he was to act as attorney for her and she was to pay him, but if they found the plaintiff performed services for the defendant, which were necessary and valuable in protecting, caring for and preserving her property rights, and the defendant received and enjoyed the benefits of such services; that in the latter event the law presumed an intention on the part of the defendant to pay and the plaintiff to charge the reasonable value of his ser-

vices. Thus the court allowed the plaintiff to recover either on the contract declared on and testified to by him, or on one implied from his rendering beneficial services to the defendant which she accepted. This was treating the plaintiff generously and perhaps enlarging his right. [Hayes v. Bunch, 91 Mo. App. 467.] The court directed a finding for the defendant on the first three items of the petition for services during the years 1886, 1887 and 1888.

It is conceded that the defendant, as a married woman, was not competent to contract for legal services or anything else prior to the act of 1889 which endowed married women with the right to contract. The plaintiff contends that subsequent to 1889 Mrs. Wells accepted and used the benefits of the services rendered by Mr. Dempsey previous to that year and thereby made herself liable for their value. Dempsey testified that the contract between him and Mrs. Wells, in which he agreed to wait ten years for his compensation, was made in 1890, and there is not a word of evidence to show it was intended to cover services previously performed. It is true, as argued by counsel, that Mrs. Wells kept the land she had obtained from her husband's estate, and that plaintiff's services prior to 1889 went toward obtaining the title to those lands for her. But she can not be held to have ratified a contract previously invalid, by retaining the land. She was not bound to relinquish her title to avoid ratifying the contract. Nothing in the nature of a ratification occurred after her disability was removed.

The court advised the jury that if they found from the evidence that the plaintiff was employed for each item of the several set out in the petition, by an independent contract, then all items due five years or more before the filing of the petition were barred by the statute of limitations. The complaint regarding this charge is that the plaintiff furnished the only evidence of the contract between him and the defendant and his state-

ment is that no service was to be paid for until ten years had elapsed after defendant acquired title to the land of her husband; that is, until about 1900; that, therefore, there was no basis in the evidence for an instruction to the jury that separate and independent contracts were made for the different items so that the statute of limitations could run against any item prior to 1900. Plaintiff testified that he was to wait ten years for his remuneration, but testified, too, that there was a separate contract of employment for every item of service. In dealing with this exception we must keep in mind that the jury might have believed plaintiff's statement regarding the distinct contracts for his services and have disbelieved his statement that nothing was to be paid him for ten years. If the former statement was true and the latter was not, it is manifest the statute of limitations ran against the different items from the time the respective services were rendered. There was no postponement of the operation of the statute unless it was agreed the plaintiff should receive nothing until ten years had elapsed; that is, that no cause of action in his favor should accrue until then. Therefore, the decision of this point hinges on whether the plaintiff testified there was a separate contract for each item. We find he swore to separate employments for the services represented by seven of the enumerated items. He so testified in connection with his explanation of the particular services. But in addition we find this general statement in regard to his employment by Mrs. Wells when she needed his help:

"As matters came up Mrs. Wells spoke to me at the time. I had conferences with her with reference to those particular matters, and they stood over just like the balance. I never attended to any of these matters before Mrs. Wells told me to. When a matter came up she would generally write me, as she did in that matter there. If there was some difficulty going on and I would have a consultation, usually Mr. Edwards

would call me down there and we would have a conference about it. Nothing was said about the amount I would charge. It had to abide the result as to whether I saved the land. As each matter came up I understood it to be a separate and distinct contract when I performed a service. All of the charges stood over like the balance."

There was ample justification for the instructions of the court in regard to the statute of limitations.

The jury were instructed that if they believed the plaintiff rendered the services in controversy as attorney for James R. Wells, and under a contract with him and not for the defendant, the verdict should be in defendant's favor. The error assigned in relation to that charge is that it ignores the possibility that if James R. Wells contracted with the plaintiff to do legal work for the protection of the defendant's interests, he might have been acting as agent for his wife, who was the party benefited. Suffice to say on this point, that there is no evidence to prove Wells employed plaintiff as the agent of Mrs. Wells, and the case was not tried on that theory. Plaintiff's own testimony was that each and every contract was made directly with the defendant. The instructions as to the jury's duty if they found the plaintiff worked for Mr. Wells, instead of the defendant, were founded on the evidence of the defendant. She testified unequivocally that whatever plaintiff did was as attorney for her husband and not for her. However beneficial to the defendant the plaintiff's services may have proved, no one will deny that if he acted under a contract with Mr. Wells and looked to him for payment, he holds no just claim against the defendant.

Exceptions were saved to certain rulings on the evidence, of which we regard none as serious except the admission of a statement of account between the defendant's husband and the plaintiff. That statement is as follows:

"EXHIBIT THREE.

"November 4th, 1887.

"Statement of account with James R. Wells.

"For the purpose of saving certain interests to said Wells I have not credited notes of his for amounts received.

"The Watts notes are entitled to a
    credit on Jan. 1, 1887, of........$1,500.00

"Due said Wells on rent to Nov. 10,
    1886, about .................. 90.00

"Due on miscellaneous account..... 104.00

"Due on money going to Dr. Pharr.. 136.00

"Since above .................... 191.00

"All other credits appear on his
    notes ....................... 145.00

"I. C. DEMPSEY."

When offered that document was objected to by plaintiff's attorney on the ground that it was in no way connected with the matters involved in the present suit and did not purport to be. Defendant's counsel insisted the exhibit was competent as tending to show plaintiff's attempt to charge Mrs. Wells for the services in suit was an afterthought and that the services were really rendered for the benefit of James R. Wells. The court admitted the exhibit and an exception was saved to the ruling. It will be observed that the date of the instrument is November 4, 1887, long before the dates of most of the items in controversy and prior to the making of the alleged contract between the plaintiff and the defendant. The instrument is obscure on its face and was not explained by extrinsic evidence. It contains nothing to show that it refers to the matters in suit or that the notes mentioned in it were received by the plaintiff as compensation for any employment for which he now seeks to recover. The plaintiff testi-

fied to doing much legal work for Mr. Wells and the statement may have related to those transactions. It was irrelevant to the issues to be tried, had no tendency to prove the fact sought to be proved by it, and if the jury took it into consideration as tending to prove that fact, its influence was prejudicial. It could have been handled in arguing the case so as to be very injurious.

The judgment is reversed and the cause remanded. All concur.